896 F.Supp. 1549 (1995)
UNITED STATES of America, Plaintiff,
v.
Timothy J. McVEIGH, Defendant.
Misc. No. 39. No. M-95-98-H.
United States District Court, W.D. Oklahoma.
August 7, 1995.
*1550 *1551 Stephen Jones, Enid, OK, Richard H. Burr, III, Houston, TX, Robert Nigh, Tulsa, OK, Michael D. Roberts, Robert L. Wyatt, IV and James L. Hankins, Jones, Wyatt & Roberts, Enid, OK, for defendant.
Patrick Ryan, U.S. Atty., Joseph Hartzler and Sean Connelly, Special Asst. U.S. Attys., Arlene J. Joplin, Asst. U.S. Atty., and Merrick Garland, Deputy Associate Atty. Gen., Oklahoma City, OK, for U.S.

ORDER
DAVID L. RUSSELL, Chief Judge.
On July 18, 1995, the United States filed a "Petition for Court Order Directing Witness to Furnish Exemplars of Handwriting to the Grand Jury" as required by a grand jury subpoena directed to Timothy James McVeigh and a directive of the Grand Jury of the United States District Court for the Western District of Oklahoma. The motion to compel was filed after Mr. McVeigh appeared before the grand jury on July 18, 1995 and, upon advice of counsel, refused to comply with the subpoena and grand jury directive. Also on July 18, 1995, Defendant Timothy James McVeigh filed his "Objection to Motion to Compel Compliance With Grand Jury Subpoena". Defendant cited three grounds for objection therein: 1) Handwriting exemplars are unnecessary to determine whether there is probable cause to indict McVeigh and are really being sought as evidence for trial, in an abuse of the grand jury process; 2) The motion to compel should be denied as an equitable remedy for alleged violations of grand jury secrecy which have assertedly occurred; and 3) Provision of handwriting exemplars in these circumstances, *1552 because it would reveal Mr. McVeigh's thought processes, would violate Mr. McVeigh's Fifth Amendment privilege.
On July 18, 1995, the Court conducted a hearing, open to the public, in which the Court heard oral argument of both parties on the issues presented by the Government's Petition and Defendant's Objection, received evidence and reviewed copies of the grand jury subpoena and directive and the exemplars which the Defendant had been asked to provide. In oral argument, Defendant asserted and argued and the Government responded to nine grounds for refusing to comply with the subpoena by providing the requested handwriting exemplars: 1) the subpoena and directive are a product of illegal electronic surveillance; 2) breaches of grand jury secrecy have occurred which excuse compliance with the subpoena or which should be remedied by denial of the motion to compel; 3) the exemplars are being sought for a pending grand jury matter in another district; 4) the subpoena or the requested production of handwriting exemplars constitutes an unreasonable search and seizure violative of the Fourth Amendment to the United States Constitution; 5) the subpoena is overly broad; 6) the subpoena and directive were improperly issued; 7) the subpoena and directive were issued for the improper purpose of obtaining evidence to be used in a criminal case; 8) the subpoena was issued for the improper purpose of obtaining evidence for trial here and in Michigan; and 9) the subpoena, as drawn, seeks to compel defendant to be a witness against himself, in violation of the witness'/Defendant's Fifth Amendment rights.
The Court, after reviewing the parties' briefs, hearing oral argument on these objections and considering the exhibits, Defendant's affidavit and the offers of proof made by Defendant, denied Defendant's objections and concluded as follows:
I am satisfied that there is a presumption of regularity of a grand jury subpoena. There have been several suggestions of irregularities on behalf of the government by the defendant. I just don't find any of those bearing relationship to whether or not the subpoenaed information should be ordered or not. I just don't find any correlation between leaks and this application.
I'm satisfied from all the cases that there is no Fifth or Sixth Amendment violation in the Court or grand jury ordering a handwriting exemplar. I am, therefore, going to order that the defendant comply with the subpoena of the grand jury.
I don't see any reason to wait on this. I don't think it would be necessary or helpful to my decision. I think the law is clear that the defendant is obligated to comply with that subpoena, and so that is going to be my order.
I believe the government has prepared an order, which I will sign. I'm not in any way denigrating the suggestions of wrongdoing that the defense has raised or putting my blessings on them either way, it's just I don't think they relate to this issue, and I'll address those issues in the motion which is pending by the defendant otherwise. But that will be my order at this time. Transcript of Proceedings on July 18, 1995 ("Tr.") at pp. 38-39.[1]
Prior to recessing Court, the Court specifically advised the Defendant that:
[T]he prospect is raised that failure to comply with this Court's order ... could be used against you in a later proceeding. I think you need to be aware of that. Not just in a contempt proceeding, but perhaps as evidence at trial. I assume that your counsel has discussed this with you, but I think you should be aware of that. Tr. at p. 42.
In addition to signing a written order directing the witness/Defendant to comply with the grand jury subpoena by providing the requested exemplars, the Court also orally advised the witness/Defendant of its Order that, consistent with the grand jury's directive, Mr. McVeigh produce handwriting *1553 exemplars as directed by FBI Agents William Teater and Peter Linder, and that that would be done outside the presence of the grand jury. See Tr. at p. 43.
Following recess to allow compliance with the Court's Order, court was again convened. The Government requested that the Court make a finding that the witness, Timothy McVeigh, refused to comply with the Court's Order and the grand jury's directive to provide handwriting exemplars to the grand jury for its use. Tr. at p. 43. Ultimately, the witness/Defendant, through counsel, stipulated to the fact that the witness, Defendant Timothy James McVeigh, failed to comply with the Court's Order directing him to comply with the grand jury subpoena and directive by providing the requested handwriting exemplars. See Tr. at pp. 49 and 55. The witness/Defendant further stipulated, through his counsel, that he in fact understood the Order of the Court ordering him to comply with the subpoena and that that order included that he write Government's Exhibits 1, 2 and 3 in cursive handwriting. See Tr. at pp. 54-55. The Court did not make a finding of contempt, but indicated that it saw no reason why it should not proceed to that stage, having found that a direct order of the Court had been violated. Tr. at p. 55. At the request of the witness/Defendant, the Court held in abeyance any hearing on contempt to allow the witness/Defendant a reasonable time to prepare, and until such time as he had submitted a brief and proffer or affidavit as to why he should not be held in contempt and the Government responded thereto. See Tr. at pp. 55-56. The Court directed that both parties address the propriety of contempt in these circumstances, given that the witness/Defendant is being detained on a criminal complaint, and whether a hearing is necessary. See Tr. at pp. 55-56. The Court advised the parties that its request for further briefing and argument should be treated as an order to show cause pursuant to Rule 42, Fed.R.Crim.P., as to why Defendant should not be held in contempt. Tr. at p. 57.
Defendant responded to the Court's briefing order by filing on July 25, 1995 "Defendant McVeigh's Memorandum of Law Objecting to Entry of Order Memorializing Refusal to Provide Handwriting Exemplars in the Absence of a Due Process Hearing; Alternative Memorandum Why Contempt is not Applicable." The "Brief of the United States Regarding McVeigh's Refusal to Provide Handwriting Exemplars" was filed on August 1, 1995.

I. Contempt

It has been conclusively established that the witness, Defendant Timothy James McVeigh, refused to comply with the Order of this Court entered July 18, 1995 directing Timothy James McVeigh to comply with the grand jury subpoena and directive by providing the requested handwriting exemplars. This refusal took place out of the presence of the Court.
On July 18, 1995, the Court orally in open court in the presence of the Defendant gave notice of the essential facts  witness McVeigh's refusal to comply with the direct Order of the Court on July 18, 1995 to comply with the grand jury subpoena and directive by providing the requested handwriting exemplars, including Government's Exhibits 1, 2 and 3, in cursive handwriting, and that this refusal took place outside of the Court's presence  allegedly constituting the criminal contempt charged by an order to show cause, see Tr. at 57, and stated that a hearing on contempt would be held in abeyance to allow the witness/Defendant a reasonable time for the preparation of his defense and until after the directed briefing. At least arguably this notice was sufficient to initiate criminal contempt proceedings under Fed.R.Crim.P. 42(b) or civil contempt proceedings. See United States v. United Mine Workers, 330 U.S. 258, 296-300, 67 S.Ct. 677, 697-700, 91 L.Ed. 884, 914-16 (1947); In re Dinnan, 625 F.2d 1146 (5th Cir.1980). See also Defendant McVeigh's Memorandum of Law at pp. 8-11. In any event, any deficiencies in the notice could be readily cured at this time. The Court therefore now considers whether it should proceed with contempt proceedings, civil or criminal,[2] notwithstanding *1554 the fact that the Government has never specifically requested that the witness be cited or prosecuted for contempt. To determine whether the Court should proceed with civil or criminal contempt proceedings and what procedures must be followed, it is necessary for the Court to consider the purposes of civil and criminal contempt, the sanctions or relief available for civil and criminal contempt and the efficacy of such sanctions or relief.
Civil contempt orders serve two purposes to compel or coerce compliance with a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's compliance.[3]E.g., O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1211 (10th Cir.1992). See also National Labor Relations Board v. Monfort, Inc., 29 F.3d 525, 528 (10th Cir. 1994).
On the other hand, the primary purpose of criminal contempt, which "is a crime in the ordinary sense," Bloom v. Illinois, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522, 528 (1968), is to punish the defiance of a court's judicial authority through a fine or imprisonment, to vindicate the court's authority and deter similar conduct. See Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966); Ex parte Grossman, 267 U.S. 87, 111, 45 S.Ct. 332, 334, 69 L.Ed. 527, 531-32 (1925); Ager v. Jane C. Stormont Hospital and Training School for Nurses, 622 F.2d 496, 499 (10th Cir.1980).
While the Court has the authority to initiate civil or criminal contempt proceedings, see Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 801, 107 S.Ct. 2124, 2134-35, 95 L.Ed.2d 740, 754 (1987), it should utilize criminal sanctions only if the civil remedy is deemed inadequate, see Shillitani v. United States, 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536 n. 9, 16 L.Ed.2d 622, 628 n. 9 (1966), consistent with the principle that a Court should exercise the least possible power necessary to achieve the desired or proposed end. See Hicks v. Feiock, 485 U.S. 624, 637 n. 8, 108 S.Ct. 1423, 1432 n. 8, 99 L.Ed.2d 721, 735 n. 8 (1988); United States v. Wilson, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186, 194-95 (1975); Shillitani, 384 U.S. at 371, 86 S.Ct. at 1536, 16 L.Ed.2d at 627-28; Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242, 248-49 (1821).
The distinction between civil and criminal contempt has become "increasingly blurred." Hicks v. Feiock, 485 U.S. at 631, 108 S.Ct. at 1429, 99 L.Ed.2d at 731. See International Union, United Mine Workers of America v. Bagwell, ___ U.S. ___, ___, & ___ & n. 3, 114 S.Ct. 2552, 2557 & 2559 & n. 3, 129 L.Ed.2d 642, 651-52 & 653-55 & n. 3 (1994). It has been said that whether a contempt is civil or criminal turns "on the character and purpose of the sanction involved." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911). But the "critical features are the substance of the proceeding and the character of the relief that the proceeding will afford." Hicks, 485 U.S. at 631, 108 S.Ct. at 1429, 99 L.Ed.2d at 731. The character of the relief is civil if the contemnor can avoid the sentence imposed upon him and purge himself of it by complying with the terms of the original order and criminal when he may not. See Hicks, 485 U.S. at 632, 635 & n. 7, 108 S.Ct. at 1429-30, 1431 & n. 7, 99 L.Ed.2d at 731-33 & n. 7.
Both civil and criminal contempt proceedings are subject to the due process requirement that the potential contemnor be given notice and a hearing, unless the contempt was committed in open court and civil contempt sanctions can be imposed summarily. See, e.g., In re Grand Jury Proceedings, 795 F.2d 226, 234 (1st Cir.1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987) and cases cited therein. Criminal penalties cannot be imposed on someone who has not been afforded all of the protections that the Constitution requires in other criminal proceedings, including the requirement that the offense be proved beyond a reasonable *1555 doubt. Hicks, 485 U.S. at 631, 108 S.Ct. at 1429, 99 L.Ed.2d at 731-32; see International Union, United Mine Workers of America, ___ U.S. at ___-___, 114 S.Ct. at 2556-57, 129 L.Ed.2d at 650-51. In the civil contempt context, most courts hold that due process does not require that an evidentiary hearing be held or that the potential contemnor have a right to call witnesses, at least when no material issues of fact are raised. In re Grand Jury Proceedings, 795 F.2d at 234-35 (collecting cases).
In accordance with the foregoing principles, the Court first considers civil contempt proceedings to coerce the witness'/Defendant's obedience to the Court's Order. The Defendant is currently incarcerated on a criminal complaint pending indictment and stands charged with a crime punishable by life imprisonment or death. It is true that the Court could impose upon the witness/Defendant a prison sentence, conditioning release from that sentence on Defendant's compliance with the Court's Order, even though that release would not mean release from physical custody, if the Court proceeded with civil contempt proceedings and found the witness/Defendant in contempt. See Hicks, 485 U.S. at 635 n. 7, 108 S.Ct. at 1431 n. 7, 99 L.Ed.2d at 733 n. 7. However, the "probable effectiveness" of such a sanction in bringing about the desired result, which the Court must consider, see O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d at 1211 (citing United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701, 91 L.Ed. at 918-19) is significantly diminished by the fact that Mr. McVeigh is currently incarcerated and is likely to remain so at least through trial. Moreover, the grand jury must indict Mr. McVeigh, if indeed it decides to do so, by August 11, 1995, at which time any remedial or coercive purpose for which any civil contempt sanction could be imposed would no longer exist. See Shillitani v. United States, 384 U.S. at 371, 86 S.Ct. at 1536, 16 L.Ed.2d at 627-28; Badgley v. Santacroce, 800 F.2d 33, 37 (2nd Cir.1986), cert. denied, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (civil contempt sentence must end when grand jury term expires because thereafter contemnor could not purge the contempt). It is doubtful that imposition of a conditional three- or four-day sentence would serve the purpose of coercing compliance given the witness' refusal to produce the exemplars after the Court both directly ordered him to produce the exemplars and warned him that his failure to comply with the Court's Order could perhaps be used as evidence against him at trial. The avoidance of the prospect that his refusal could be used as evidence against him at trial would seem to provide a greater incentive to this witness to provide the exemplars than would any purportedly coercive conditional prison sentence, which could at most last three or four days. In summary, any civil contempt sanction, and therefore further civil contempt proceedings, would be futile. Compare with United States v. Wilson, 421 U.S. 309, 317 n. 9, 95 S.Ct. 1802, 1807 n. 9, 44 L.Ed.2d 186, 193 n. 9 (1975); Shillitani v. United States, 384 U.S. at 371 n. 9, 86 S.Ct. at 1536 n. 9, 16 L.Ed.2d at 628 n. 9 (1966); In re Grand Jury Proceedings Harrisburg Grand Jury, 658 F.2d 211, 217-18 (3rd Cir.1981); United States v. North, 621 F.2d 1255, 1261 n. 9 (3rd Cir. 1980), cert. denied, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).
Because it is highly unlikely, indeed there is no reasonable probability, that imposition of a civil contempt sanction would be effective, i.e., would cause Defendant to comply with the Court's Order, the Court declines to proceed as in civil contempt and considers criminal contempt proceedings. Criminal contempt proceedings are punitive in character and have as their objectives vindication of the Court's authority and deterrence of similar contumacious and disrespectful acts. See Ex parte Grossman, 267 U.S. 87, 111, 45 S.Ct. 332, 334, 69 L.Ed. 527, 531-32 (1925); In re Grand Jury Proceedings Harrisburg Grand Jury, 658 F.2d 211, 217 (3rd Cir.1981). While willful and deliberate defiance of a court order is a serious matter, and the objectives of vindicating the Court's authority and deterring like conduct are important, criminal contempt proceedings are time-consuming and expensive. An evidentiary hearing must be afforded or, if the Court considers imposing a sentence in excess of six months, a jury trial must be provided. A defendant in a criminal contempt *1556 proceeding or trial has a right to the assistance of counsel, and is entitled to the full panoply of constitutional protections applicable in other criminal proceedings. See, e.g., International Union, United Mine Workers of America v. Bagwell, ___ U.S. at ___-___, 114 S.Ct. at 2556-57, 129 L.Ed.2d at 650-51. Such proceedings would involve a substantial investment of the Court's and the Government's valuable resources. Moreover, the witness/Defendant is indigent and is being represented by court-appointed attorneys. Criminal contempt proceedings would require a substantial expenditure of the witness'/Defendant's courtappointed attorneys' time, the cost of which would be borne by the public.
Obviously, imposition of a fine as a punishment in the event the witness/Defendant were found guilty of criminal contempt would be meaningless because he has no ability to pay a fine. And given that the Defendant is currently incarcerated awaiting indictment and trial for a crime punishable by life imprisonment or death, the utility of a prison sentence of appropriate duration for the crime of contempt, if the Court were to continue criminal contempt proceedings, and the witness/Defendant were found guilty of criminal contempt, is highly questionable. In summary, the Court in its discretion concludes that the utility of continuing criminal contempt proceedings in these circumstances is outweighed by the costs of so proceeding.

II. Due Process

The witness/Defendant McVeigh argues that the mere entry of an order memorializing his refusal to produce handwriting exemplars, in the absence of a hearing comparable to that which would be afforded in a civil contempt proceeding, denies him both substantive and procedural due process. Underlying his argument is the assumption that such an order may be used at trial of the witness/Defendant, if indicted, to establish an adverse inference of the Defendant's guilt based on his refusal to provide a handwriting exemplar, or that that is the reason why the Government proposed entry of the order. Moreover, Defendant argues that admission of the "order" or its contents at trial, in the event the witness/Defendant is indicted, would violate Defendant's Fifth Amendment right to due process and his Fifth Amendment privilege against self-incrimination.
Clearly, the Court's mere finding, based upon Defendant's stipulation, that the witness/Defendant refused to comply with the Court's Order and the grand jury's directive to provide handwriting exemplars to the grand jury cannot constitute a denial of due process. The witness'/Defendant's refusal and the Court's finding followed oral argument and proffers concerning the witness' objections to the subpoena and provision of the requested exemplars, the Court's denial of those objections and the Court's advisement to the witness/Defendant that the witness'/Defendant's failure to comply with the Court's Order could be used against him "in a later proceeding ... [n]ot just in a contempt proceeding, but perhaps as evidence at trial." Tr. at 42. However, because the witness/Defendant specifically requested that the Court defer ruling on his Fifth Amendment objection until such time as he could present expert testimony relating to that objection, and out of an abundance of caution, the Court will treat McVeigh's objection to entry of an order memorializing his refusal to provide handwriting exemplars in the absence of a due process hearing and response to the show cause order, see Defendant McVeigh's Memorandum filed July 25, 1995, as a motion to reconsider this Court's Order directing Timothy James McVeigh to comply with the grand jury subpoena and directive by providing the requested exemplars and consider or reconsider each of the witness'/Defendant's objections in light of the arguments made and evidence submitted by the witness/Defendant in his Memorandum filed July 25, 1995 and the Government in its Brief filed August 1, 1995. See infra.
Any determination as to what process is due prior to admission at trial of evidence that the witness/Defendant refused to provide handwriting exemplars or as to whether admission of such evidence would violate the Defendant's right to due process and/or privilege against self-incrimination is premature at this time. Defendant has not been indicted and indeed may not be indicted. Even if *1557 the Defendant is indicted, the Government may not attempt to introduce such evidence. Any determination of what, if any, process or further process is due prior to admission of evidence of Defendant's refusal to comply with the Court's Order and produce the handwriting exemplars or, conversely, that admission of such evidence would violate Defendant's right to due process and/or privilege against self-incrimination under the Fifth Amendment must await indictment and pre-trial notification by the Government of its intention of using such evidence at trial.

III. Witness McVeigh's Objections to Compliance With the Grand Jury's Subpoena and Directive to Produce Handwriting Exemplars and the Court's Enforcement Order

A. Challenges to the Purpose of the Grand Jury Subpoena and Directive
In his Memorandum filed July 25, 1995, which the Court treats as a motion to reconsider its Order directing Mr. McVeigh to comply with the subpoena and directive, the witness/Defendant challenges the subpoena and directive as being issued or used for three allegedly improper purposes: 1) to develop evidence for the use of the Government in a criminal case against the Defendant rather than to determine probable cause; 2) to gather evidence for trial here and in Michigan; and 3) to gather information to be used in a pending grand jury investigation in Michigan. In connection with these arguments, Mr. McVeigh asserts that the Government already has an ample supply of samples of his handwriting so the exemplars are unnecessary. He also asserts that the Government is required to show by affidavit that the exemplars sought are relevant, within the grand jury's jurisdiction and not sought primarily for another purpose, relying on In re Grand Jury Proceedings (Schofield), 507 F.2d 963, 966 (3rd Cir.1975), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). But the "law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." United States v. R. Enterprises, Inc., 498 U.S. 292, 300, 111 S.Ct. 722, 728, 112 L.Ed.2d 795, 807 (1991). The grand jury directive contains express findings of relevance and necessity. And "there is no doubt that [McVeigh knows] the subject of the grand jury investigation pursuant to which the [exemplar] subpoena [was] issued." R. Enterprises, 498 U.S. at 302, 111 S.Ct. at 728, 112 L.Ed.2d at 808. Accordingly, the witness/Defendant has the burden of showing that "there is no reasonably possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." Id. 498 U.S. at 301, 111 S.Ct. at 728, 112 L.Ed.2d at 807-08. The witness/Defendant has failed to show that there is no such reasonable possibility or that a substantial factual issue as to the absence of such reasonable possibility exists. See In re Grand Jury Proceedings, 795 F.2d at 234-35 and cases cited therein.
McVeigh argues that the "grand jury already has sufficient evidence of probable cause and is simply being used by the Government to prepare its trial." Memorandum at p. 31. But the Supreme Court has made it clear that prosecutors are not required to seek indictments as soon as probable cause or even proof beyond a reasonable doubt is established. United States v. Lovasco, 431 U.S. 783, 791-93, 97 S.Ct. 2044, 2049-50, 52 L.Ed.2d 752, 759-61 (1977). The witness'/Defendant's reliance on United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir.1979) to assert prosecutorial misuse of the grand jury is misplaced because that case merely holds that the Government may not use the grand jury to discover additional evidence or to prevent a defendant's access to evidence after the defendant has been indicted. See United States v. Gibbons, 607 F.2d at 1328.
The witness/Defendant offers nothing to support his assertions that the grand jury subpoena and directive are being used to gather information to be used in a pending grand jury investigation in Michigan or to gather evidence for a trial in Michigan other than rank speculation or supposition. Such rank speculation or supposition is insufficient to overcome the presumption of regularity that attaches to the grand jury's acts, see R. Enterprises, Inc., 498 U.S. at 300-301, 111 S.Ct. at 727-28, 112 L.Ed.2d at 807-08, or to *1558 raise a substantial factual issue as to the purpose for which the subpoena and directive were issued.

B. Alleged Overbreadth of the Subpoena and Directive
The witness/Defendant offers no evidence to support his assertion that the subpoena is overly broad and seeks irrelevant material. The grand jury directive contains an express finding by the grand jury that the "handwriting exemplars required by the subpoena ... are necessary to determine authorship of certain documents relevant to the Grand Jury's investigation." Moreover, William E. Teater, Special Agent with the Federal Bureau of Investigation, attests that "[t]he handwriting forms Mr. McVeigh was asked to execute are similar to those routinely used in cases where handwriting exemplars are sought." Declaration of William E. Teater (Exhibit "7" to Brief of the United States filed August 1, 1995) at ¶ 3. The Court has examined the three exemplars the witness has been asked to produce in cursive handwriting and finds no basis for concluding that they are unreasonable or overly broad. The witness/Defendant has failed to sustain his burden of establishing that "compliance [with the subpoena] would be unreasonable or oppressive," Fed.R.Crim.P. 17(c); see R. Enterprises, Inc., 498 U.S. at 301, 111 S.Ct. at 728, 112 L.Ed.2d at 807-08, or to raise a substantial factual issue concerning the breadth of the grand jury subpoena and the relevance of the exemplars sought thereby.

C. Alleged Grand Jury Bias
The witness/Defendant challenges the composition of the grand jury, arguing that because the entire venire is composed of residents of the Western District of Oklahoma, who, he claims, are all "victims" of the crime which is the subject of the grand jury's investigation in which the witness is the target, the grand jury cannot independently examine the evidence to make a determination of probable cause. He further suggests that the grand jury has been prejudiced or at least affected by "unprecedented" publicity relating to the crime under its investigation. In suggesting or asserting bias or prejudice of the grand jurors, the witness/Defendant implies that he should not or cannot be compelled to comply with the grand jury subpoena and directive because any indictment that may be issued will be subject to dismissal based upon grand jury prejudice and/or exposure to publicity.
There are at least four reasons why the witness'/Defendant's challenge to the grand jury's composition and claim of grand jury bias fails as a "defense" to enforcement of the grand jury subpoena and directive. First, the United States Supreme Court, in upholding contempt convictions, has held that a witness "is not entitled to challenge the authority of the court or of the grand jury, provided that they have a de facto existence and organization." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979, 983 (1919). Thus, it is generally recognized that a "recalcitrant witness ... lacks standing to challenge the composition of a grand jury." In re Maury Santiago, 533 F.2d 727, 730 (1st Cir.1976). See generally, 1 C.A. Wright, Federal Practice and Procedure: Criminal § 102 (1982) at p. 208. ("Ordinarily challenges to the composition of the grand jury come from the defendant, and a witness before the grand jury has no standing to object on this ground.) Secondly, even if McVeigh had standing as a witness to object to the composition of the grand jury, his objection would fail because grand jurors are required to be "selected at random from a fair cross-section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Thirdly, McVeigh's claim of grand jury bias or prejudice resulting from exposure to publicity as a basis for dismissal of an indictment issued by the grand jury is premature in that no indictment has been returned. And finally, even absent a valid grand jury subpoena and directive, the Court has independent authority to order the handwriting exemplars under the All Writs Act. See United States v. Li, 55 F.3d 325, 329 (7th Cir.1995); United States v. Rudy, 429 F.2d 993 (9th Cir.1970); Lewis v. United States, 382 F.2d 817, 819 (D.C.Cir.), cert. denied, 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967). Accord United *1559 States v. Cotner, 657 F.2d 1171, 1173 (10th Cir.1981).

D. Alleged Illegal Electronics Surveillance as the Alleged Source of the Subpoena and Directive
The witness/Defendant asserts that he has a "reasonable belief that illegal electronic surveillance is the source for the subpoena and directive," Memorandum filed July 25, 1995 at p. 31, incorporating Defendant's "Motion for Search and Disclosure of Electronic or Other Surveillance," and relies on case law holding that "the Government's failure to respond adequately to a claim of electronic surveillance constitutes just cause for refusal to comply with an order to provide evidence before a grand jury." In re Grand Jury Matter (Backiel), 906 F.2d 78, 91 (3rd Cir.1990).
The affidavit of counsel for the witness/Defendant attached to the "Motion for Search and Disclosure of Electronic or Other Surveillance" and "in support of the Defendant's declination to exercise, pursuant to Grand Jury Directions, certain handwriting exemplars," Affidavit of Stephen Jones (Exhibit "A" to Motion for Search and Disclosure) at ¶ 1, is similar to that which the Tenth Circuit in In re Grand Jury (Vigil), 524 F.2d 209 (10th Cir.1975), cert. dismissed, 425 U.S. 927, 96 S.Ct. 1526, 48 L.Ed.2d 170 (1976) found "grossly lacking," 524 F.2d at 214, describing, for example, "ordinary experiences which are encountered by the telephone user from time to time in his daily life," id., and "lacking in any concrete evidences or even suggestion of surveillance." Id. The witness/Defendant has failed to raise a substantial factual issues as to the existence of illegal electronic surveillance as the source of the subpoena and directive. But in any event, the specific and absolute sworn statements by FBI Special Agent Henry C. Gibbons, Chief Division Council for the Oklahoma City Division of the FBI, whose duties include supervision of the electronic surveillance program, that "there has been no illegal FBI-initiated electronic surveillance undertaken in connection with [the Murrah building bombing investigation]"; that "there has been no FBI-initiated interception of the conversations of Timothy James McVeigh, his counsel, or investigators, undertaken in connection with that investigation"; that he would know of any FBI-initiated electronic surveillance in Oklahoma City and any initiated elsewhere arising out of the bombing investigation; and that "[a]ny electronic surveillance that the Bureau of Prisons may have conducted of Mr. McVeigh ... has not been obtained or used in the criminal investigation of the Murrah building bombing," submitted by the Government, see Declaration of Henry C. Gibbons (Exhibit "8" to Brief of the United States filed August 1, 1995), at ¶¶ 2-4, are sufficient under all existing authority to end further inquiry by the Court[4] concerning the existence of illegal electronic surveillance. See In re Grand Jury (Vigil), 524 F.2d at 214-16. See generally In re Grand Jury Matter (Backiel), 906 F.2d 78, 91 (3rd Cir.1990) (collecting cases), cert. denied, 498 U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990).
Moreover, the witness/Defendant had failed to make even a colorable showing of any nexus between the subpoena for handwriting exemplars and the alleged electronic surveillance, i.e., that the subpoena was based upon or resulted from illegal interception of the witness' communications. See In re Grand Jury (Vigil), 524 F.2d at 213 (requiring a "showing that the interrogation would be based upon the illegal interception of the witness communications") (emphasis added). A fortiori, no genuine factual issue exists in this regard in light of the Declaration of William E. Teater that "[t]he decision to seek, and the composition of, the requested handwriting [exemplars] were not based upon any intercepted electronic wire, or oral communications of Mr. McVeigh, his attorneys or investigators." Declaration of William E. Teater (Exhibit "7" to Brief of the United States filed August 1, 1995 at ¶ 3.)

*1560 E. Alleged Grand Jury Secrecy Violations As Grounds for Quashing, or Noncompliance with, the Grand Jury Subpoena
To date, the witness/Defendant has not made even a prima facie showing that grand jury secrecy violations have occurred. See Order, United States v. McVeigh, Case No. M-95-98-H, entered July 31, 1995, at pp. 13-22. The witness/Defendant has filed two additional motions directed to that issue which the Court has not yet addressed and will not address herein because even if the witness/Defendant were to prove that grand jury secrecy violations had occurred, quashing the grand jury subpoena or excusing the witness'/Defendant's compliance therewith would not be an appropriate remedy, see In re Grand Jury Subpoena Served upon Pedro Archuleta, 432 F.Supp. 583, 599 (S.D.N.Y. 1977), and would unduly interfere with the grand jury proceedings. Cf. Blalock v. United States, 844 F.2d 1546, 1551 (11th Cir. 1988); In re Grand Jury Investigation (Lance), 610 F.2d 202, 216-17 (5th Cir.1980) (in determining whether a prima facie showing of a grand jury secrecy violation has been made, court must consider whether the requested relief will interfere with the grand jury proceedings).

F. Compliance with the Subpoena as an Asserted Unreasonable Search and Seizure in Violation of the Fourth Amendment
The witness/Defendant asserts that because he "does not routinely or repeatedly show cursive handwriting to the public," but has "chosen to keep his cursive handwriting private," Memorandum filed July 25, 1995 at p. 20, the grand jury subpoena compelling exemplars in cursive writing constitutes an unreasonable search and seizure. To support this claim and his Fifth Amendment claim, the witness/Defendant has submitted his affidavit in which he attests that "[f]or approximately the past six (6) years, I have used printed handwriting, as opposed to cursive handwriting for my written communications," and that "hand-printing is used almost exclusively by me and has been for that same period of time." Affidavit of Tim McVeigh (Exhibit "A" to Memorandum filed July 25, 1995) at ¶¶ 1 and 2.
The United States Supreme Court has held that a "grand jury subpoena is not a `seizure' within the meaning of the Fourth Amendment and ... that Amendment is not violated by a grand jury directive compelling production of `physical characteristics' that are `constantly exposed to the public.'" United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 775-76, 35 L.Ed.2d 99, 102-03 (1973) (quoting United States v. Dionisio, 410 U.S. 1, 9-10, 14, 93 S.Ct. 764, 769-70, 771, 35 L.Ed.2d 67, 76-77, 79 (1973)). Accord United States v. Cotner, 657 F.2d 1171, 1173 (10th Cir.1981). See also United States v. Hollins, 811 F.2d 384, 387 (7th Cir.1987). ("A handwriting exemplar is neither a search nor seizure under the fourth amendment.").
The Court is of the opinion that the lack of Fourth Amendment protection for handwriting and voice exemplars does not turn on whether the physical characteristics of a person's handwriting or voice are constantly exposed to the public, but on whether a person has a legitimate expectation of privacy in the physical characteristics of his or her script or voice. Even a person who rarely writes or speaks, or does so only as a matter of necessity, has no legitimate expectation of privacy in the physical characteristics of his or her script or voice. In any event, here the Government has submitted copies of a number of checks and other documents signed and having the payment amounts filled out in cursive handwriting by the witness/Defendant in 1992 and 1993. See Exhibit "9" to Brief of the United States filed August 1, 1995. In view of this evidence that the witness has repeatedly exposed the physical characteristics of his cursive handwriting to the public, the witness/Defendant can claim no legitimate expectation of privacy in his cursive handwriting.
The witness/Defendant further argues that compelling him to provide cursive handwriting would constitute an unreasonable search and seizure because it would amount to an extraction of the witness'/Defendant's intellectual processes. Minimal thought processes and mind, eye and hand coordination or mind, mouth and vocal cord *1561 coordination are involved in the production of any handwriting or voice exemplar, but the thought processes involved are not revealed, only the products thereof, and the involvement of these minimal thought processes and the mind-body coordination necessary to produce the exemplars, even for one who seldom writes or does not regularly write in cursive, does not render the manner in which the exemplars are obtained unreasonable.

G. Compliance with the Subpoena as Asserted Compulsory Self-Incrimination in Violation of the Fifth Amendment
The witness/Defendant does not take issue with well-established law that the Fifth Amendment privilege against self-incrimination applies only to "`evidence of a testimonial or communicative nature'" and "does not protect a suspect from being compelled ... to produce `real or physical evidence,'" Pennsylvania v. Muniz, 496 U.S. 582, 589, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528, 543-44 (1990) (quoting Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, 916 (1966)), including handwriting exemplars. See Gilbert v. California, 388 U.S. 263, 266-67, 87 S.Ct. 1951, 1953-54, 18 L.Ed.2d 1178, 1182-83 (1967); (handwriting exemplar is an identifying physical characteristic outside the Fifth Amendment's protection); United States v. Cotner, 657 F.2d at 1173 ("taking of handwriting exemplars does not violate the Fifth Amendment privilege against self-incrimination"). See also Doe v. United States, 487 U.S. 201, 217 & n. 15, 108 S.Ct. 2341, 2351 & n. 15, 101 L.Ed.2d 184, 201-02 & n. 15 (1988) (provision of a handwriting sample is a nontestimonial act and even the implicit acknowledgment of one producing the sample that the writing was in fact his is not sufficiently testimonial for the Fifth Amendment privilege to apply). Rather, the witness/Defendant asserts that because he does not regularly or customarily write in cursive, but has used handprinting "almost exclusively" for the last six years, see Affidavit of Tim McVeigh (Exhibit "A" to Memorandum filed July 25, 1995) at ¶¶ 1-2, cursive handwriting produced by him would not in fact amount to a "physical characteristic" and a nontestimonial act but testimonial evidence involving a compelled intellectual process in changing from one method of writing to another. He relies on the case of United States v. Campbell, 732 F.2d 1017 (1st Cir.1984) and the Affidavit of Pat Tull (Exhibit "B" to Memorandum filed July 25, 1995), a certified document examiner, to support his argument. The case of United States v. Campbell, 732 F.2d 1017, is clearly distinguishable from the case herein. The manner in which the exemplars at issue in Campbell were to be produced, by taking dictation without seeing the words, would have required the defendant's intellectual process of spelling and revelation thereof. See Campbell, 732 F.2d at 1022.
Accepting as true the statements contained in the witness/Defendant's affidavit and the statements and expert opinions contained in the affidavit of Pat Tull, with the exception of the statement that cursive handwriting by a person who normally prints is not a "physical characteristic," to the extent that statement is a legal conclusion, see Affidavit of Pat Tull (Exhibit "B" to Memorandum filed on July 25, 1995) at ¶ 17, the Court is unpersuaded that the minimal though process involved in the production of cursive handwriting, even by one who uses another form of writing almost exclusivelyrecalling letter symbols and their formation, does not transform the physical evidence of handwriting into a testimonial act, compulsion of which is protected by the Fifth Amendment. As the Government succinctly puts it, "physical evidence does not become `testimonial' simply because it is the product of the mind." Brief of the United States filed August 1, 1995 at p. 17.
At least some thought is required in all "contexts where the evidence could be produced only through some volitional act," yet the Fifth Amendment does not bar requiring witnesses to use their own volition to produce physical evidence. Pennsylvania v. Muniz, 496 U.S. at 591, 110 S.Ct. at 2644-45, 110 L.Ed.2d at 545. In Muniz, the Supreme Court held that Muniz's physical inability to articulate words in a clear manner due to the lack of muscular coordination of Muniz's tongue and mouth was not a testimonial component of Muniz's responses to the officer's questions in roadside sobriety tests. Muniz, *1562 496 U.S. at 590-91, 110 S.Ct. at 2644-45, 110 L.Ed.2d at 544-45. Such physical evidence was not testimonial because it did not reflect the suspect's communication of personal beliefs, or knowledge of facts or assertions of facts by him. See id., 496 U.S. at 597-98 & n. 12, 110 S.Ct. at 2648-49 & n. 12, 110 L.Ed.2d at 549-50 & n. 12. Similarly, in this case the handwriting exemplars may reveal a "lack of smoothness," Affidavit of Pat Hull at ¶ 12, and that lack of smoothness may result because of "the intellectual process involved in just recalling the cursive letters," id. at ¶ 13, but any such lack of smoothness is a physical characteristic that does not reveal the content of the mental process involved in the production of the exemplars. The exemplars are nontestimonial because they do not reflect any communication by the witness of his beliefs, knowledge of facts or assertions of fact.
Neither the grand jury subpoena and directive nor the Court's Order of July 18, 1995 requiring the witness/Defendant to furnish handwriting exemplars in cursive handwriting violates the witness'/Defendant's Fifth Amendment privilege against compelled self-incrimination. That privilege is inapplicable to the taking of the handwriting exemplars because such evidence is physical evidence and not evidence of a testimonial or communicative nature. No substantial factual issue necessary to the resolution this claim of privilege was raised by the proffers and affidavits submitted by the witness/Defendant.

CONCLUSION
The court in its discretion concludes that civil contempt proceedings would be futile and that the utility of for criminal contempt, which is punitive in nature and is designed to vindicate the court's authority where there has been willful disobedience of a lawful court order, and to deter like conduct, in the circumstances of this case, is outweighed by the cost to the Court, the Government and the taxpayers, measured in time, resources and dollars, of continuing criminal contempt proceedings.
The Court's finding, upon the witness'/Defendant's stipulation, that the witness/Defendant refused to comply with the grand jury subpoena and directive and the Court's Order of July 18, 1995 to produce the handwriting exemplars in cursive, does not violate the witness'/Defendant's due process rights. Moreover, prior to entering its Order of July 18, 1995, the Court reviewed the parties' briefs and the handwriting exemplars, heard oral arguments and proffers on all of the witness/Defendant's objections to the subpoena and directive and denied all of the witness'/Defendant's objections. The Court herein has treated Defendant McVeigh's Memorandum of Law Objecting to Entry of Order, etc. filed July 25, 1995 as a motion to reconsider this Court's Order of July 18, 1995; found that no substantial issue of fact was raised by the objections and evidence of the witness/Defendant; and has concluded that none of the witness'/Defendant's objections to entry of the Court's Order of July 18, 1995 constitutes a valid excuse or defense to compliance with or enforcement of the grand jury subpoena and directive for the production of cursive handwriting exemplars. However, any determinations as to whether admission at any future trial of evidence of the witness'/Defendant's refusal to furnish the exemplars would violate the witness/Defendant's Fifth Amendment privilege against self-incrimination and/or due process rights is premature at this time. In so holding, the Court expresses no opinion as to whether this Court's findings and conclusions herein are binding on any such future determination, in the event the witness/Defendant is indicted and the Government attempts to introduce at trial evidence of the witness'/Defendant's refusal to furnish the exemplars.
All objections of the witness/Defendant to entry of an order materializing his refusal to provide handwriting exemplars, see Memorandum filed July 25, 1995, which the Court treats as a motion to reconsider this Court's Order of July 18, 1995 directing the witness/Defendant to furnish the cursive handwriting exemplars pursuant to the grand jury subpoena and directive, are without merit and are DENIED. The Court concludes that the cursive handwriting exemplars required by the subpoena and directive are relevant to the subject matter of the grand jury's investigation; that the subpoena and *1563 directive are not overly broad; that no grand jury irregularity has been shown which excuses or provides a legal basis for the witness'/Defendant's noncompliance with the subpoena and directive or to enforcement thereof; and that the witness/Defendant has no constitutional right or privilege under the Fourth or Fifth Amendment to the United States Constitution to refuse to furnish the exemplars pursuant to the subpoena, directive and the Court's Order of July 18, 1995 and, conversely, that the Court's Order of July 18, 1995 directing the witness/Defendant to furnish the cursive handwriting exemplars does not violate the witness'/Defendant's constitutional rights under the Fourth or Fifth Amendment to the United States Constitution.
IT IS SO ORDERED.
NOTES
[1] Because the witness/Defendant never raised or argued any objection to enforcement of the subpoena and directive based upon the Sixth Amendment, it is obvious that the Court misspoke in referring to the absence of a Sixth Amendment violation. The Court's intent was to say that "there is no Fifth or Fourth Amendment violation...."
[2] The applicable civil contempt statute is 28 U.S.C. § 1826(a). The applicable criminal contempt statute is 18 U.S.C. § 401(3).
[3] Neither the Government nor the witness/Defendant has suggested that a fine for compensatory purposes would be appropriate nor is there any evidence of a loss which could be compensated by monetary relief.
[4] The witness/Defendant does not have standing to raise challenges under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., to interceptions of third party conversations occurring on premises in which he has no reasonable expectation of privacy. Alderman v. United States, 394 U.S. 165, 171-76 & n. 9, 89 S.Ct. 961, 965-68 & n. 9, 22 L.Ed.2d 176, 185-88 & n. 9 (1969). See In re Womack, 466 F.2d 555, 558 (7th Cir.1972).